[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE (DOCKET ENTRIES 164, 165, 166, 167, 168, 173, 176, 177)
The court has the following motions for determination:
Docket entry #164, Plaintiff's Motion for Contempt.
Docket entry #165, Defendant's Motion for Order To Compel and Give Effect to Court Judgment and Amendment thereto dated June 11, 1992.
Docket entry #166, Defendant's Motion for Contempt.
Docket entry #167, Defendant's Motion for Modification of Alimony to increase the same.
Docket entry #168, Plaintiff's Motion for Modification of Alimony.
Docket entry #173, Plaintiff's Motion for Termination of Alimony.
Docket entry #176, Plaintiff's Motion for Cessation of Alimony.
Docket entry #177, Defendant's Request to Reconsider. While plaintiff's Motion for Contempt (#164), defendant's Motion for Order to Compel (#165), and defendant's Motion for Contempt (#166) were ruled upon by the court on December 11, 1991 and January 17, 1992, there has been additional evidence presented by the parties on these motions which the court will treat in this memorandum.
A decree of dissolution of the parties' marriage was entered on July 28, 1986, (F. Freedman, J.). The parties separated in February 1983 and this action was commenced in May 1983. Trial of this matter commenced February 21, 1985 and concluded June 1986. Thereafter each of the parties appealed Judge Freedman's decision.
The Appellate Court in a per curiam decision affirmed the judgment. (Levy v. Levy, 14 Conn. App. 801 (1988). The parties have been fighting ever since. The battle between the parties has now lasted for more than nine years. The trial of the original proceeding lasted over ten days. Trial of these matters lasted over eight days. The parties incurred sizeable legal fees and expenses for experts in this proceeding. It is time, now, for an end to this litigation. CT Page 7179
On January 17 1992, this court found each of the parties in contempt and entered orders with regard to attorneys' fees and expenses reserving, however, to the plaintiff the opportunity to present evidence on the alleged damage to the plaintiff's art.
The art awarded by Judge Freedman to the plaintiff was received by him in January 1992 pursuant to the court's order on January 17, 1992. At that time the plaintiff observed damage to various paintings. He claims damage to the painting called Royal Heart by Sally Hazlett [Judge Freedman's Memorandum of Decision, page 6, paragraph 6(a)(1)] (See plaintiff's exhibit B). Plaintiff testified to damage along the edge of the painting and a hole in the painting. He testified the value of the painting is $4,000. — $8,000. without damage and that its value now was "very little." He claims damage to the painting by Christopher [6(a)(3)] (See plaintiff's exhibit C and plaintiff's exhibit G) — consisting of paint loss. He testified the value of the painting is $6,000. — $15,000. without damage and that its value now was "much, much less." Plaintiff claims damages to the Tsingos [6(a)(6)] (See plaintiff's exhibit D) — consisting of paint cracking, paint loss on the stem and break of paint. He testified the value of the painting is $10,000. in reasonable condition and that its worth now is "substantially less" Plaintiff claims damage to Morning Glory [6(a)(11)] consisting of water stains and insect infestation. Since the artist is unknown, his testimony was that it is difficult to evaluate its worth and therefore the loss.
The plaintiff's chief complaint is damage to a 43 x 43 painting by Ad Reinhardt. The alleged damage is shown in the photos comprising plaintiff's exhibit E — brushings, abrasions, and surface contact with foreign bodies. The cost of restoration would be $15,000. by Daniel Goldreyer who testified in this proceeding. Ms. Ellen Ewald testified the Reinhardt had lost its shimmer or glow and the painting was "dead" and that it could not be sold at auction in its present condition. She testified that after restoration its value would be $80,000. — $100,000., but if it had been sold in 1988 or 1989 it would have brought $250,000. — $300,000.
The defendant produced experts to rebut the testimony of plaintiff's experts. Mr. Jacques Curtis Truman from North Miami Beach, a retired art dealer, described the delicacy of Reinhardt's paintings and expressed the opinion that the Reinhardt was in the condition it was because of its earlier restorations. Ms Dana Cramer, a fine arts conservator, also testified that the Reinhardt no longer had its original surface and was evidencing the effects of its earlier restorations. She testified she had seen the painting before and upon her examination on May 20, 1992 at Mr. Goldreyer's studio she saw no CT Page 7180 appreciable difference. She testified that it was already a "compromised Reinhardt." Ms Patricia Garland, a painting conservator from the Wadsworth Atheneum testified that the damage that she saw on the paintings described by the plaintiff was as a result of the natural aging process occurring in a home setting.
It is the plaintiff's claim that the defendant's retention of the paintings constituted a bailment, and that she is responsible for any damage done to the paintings while in her possession.
Under these circumstances, the defendant was responsible for the paintings while in her possession.
Her duty in this regard was not as an insurer, but to exercise reasonable care while these paintings were in her control. The court finds that there was no intentional damage to the paintings while the paintings were in the defendant's control, that any change in condition in the paintings while in the defendant's control was in the nature of ordinary wear and tear, and that plaintiff has failed to sustain his burden of proof that the defendant was negligent in her care of the paintings. The court, therefore, denies the plaintiff's claim that the defendant is responsible for the alleged damage to the paintings.
As to the plaintiff's claim that he has lost the opportunity for a sale of the Reinhardt at a more advantageous market price than at present, this claim is also denied. The plaintiff has failed to sustain his burden of proof in this regard. The court finds that this claim lies in the realm of conjecture.
The plaintiff claims damages for loss of enjoyment of the Reinhardt and other paintings. This claim is also denied. The plaintiff has failed to sustain his burden of proof in this regard.
The plaintiff claims monetary damages for the other art the defendant has misplaced or secreted (see plaintiff's claim for relief #4). This same claim is made by the defendant for art she claims she did not receive. As to both parties these claims are denied for insufficient proof as to the items and the value of such items.
As to the plaintiff's Claims For Relief:
1. Denied — not pursued by the plaintiff.
 2. a. denied b. denied CT Page 7181 c. denied d. denied e. denied f. denied g. denied
3. denied
4. denied
5. denied
The defendant's request for reconsideration of the ruling of January 17, 1992 is denied.
The defendant claims the insured value of certain works of art awarded to her but which were not in her possession at the time of judgment. There has been insufficient evidence on the items that the defendant claims were not delivered to her and insufficient evidence on value. Defendant's claim for relief is, therefore, denied together with her amendment to the Motion To Compel dated June 11, 1992. The defendant's Motion To Compel (docket entry #165) was ruled upon by the court on January 17, 1992. The court entered its orders at that time. The defendant's request for further relief on this issue is denied.
The defendant claims statutory interest on the money upon the partnerships wrongfully withheld by the plaintiff. This claim lies in the court's discretion. Since the parties each have been found in contempt for failure to abide by the court's orders, neither party has had "clean hands." The defendant's request for interest is denied.
MOTIONS FOR MODIFICATION
The plaintiff is now 65 years of age. His health is poor. He has heart arythmias, circulatory problems and a whiplash injury sustained as the result of an automobile accident in 1991. He remains retired and lives in San Diego, California in a rental house in which he shares the rental with two others. He moved to California three years ago to be in a warmer climate for his health. His financial situation has deteriorated greatly. He reports assets of $8,900. and liabilities of $90,800. The indebtedness to his brother is $15,000. more than shown on his affidavit. His weekly income consists of $126.00 in Social Security and $5.00 in bank interest. He seeks elimination of the court's order of $1.00 per year alimony.
The defendant is 60 years of age. She has assets of $171,800. and liabilities of $62,600. She has net weekly income CT Page 7182 of $128. from her investments. Her son handles her investments and advances money from her Merrill Lynch account and pays her bills. Of the liabilities she has listed, $52,500. is in connection with the Limited Partnerships (Krollover and Limited Waterfront) and are not yet due. Her financial affidavit did not include an additional $10,000. in her Merrill Lynch fund, 434 additional shares of Bank of New Haven stock, nor valuations for the Limited Partnership known as Buffalo Waterfront, Valley Mall and Krollover. During the year 1990 she worked for 8 months as Director of Sales Marketing for Portolano Products in New York City and earned $33,000. At the time of the decree, she was attending Yale University School of Fine Arts. She is extremely knowledgeable in art and has a real estate license. During the period 1970 to 1977 the plaintiff and defendant operated their own business known as Promises and Friends engaged in the manufacturing and sale of blue jeans. Judge Freedman found that both parties contributed greatly to the operation of that business and it was very successful. The defendant is apparently in good health and is an intelligent and capable individual.
The defendant resides in Orange in the rental home occupied by the parties at the time of the decree. The parties were married in 1962 and separated in 1983. During the time their business was in operation, they established trust funds for the benefit of each of their two children. In 1986 those trust funds amounted to approximately $500,000. each (see page 3 of Judge Freedman's Memorandum of Decision).
The various motions regarding modification (docket entries #167, #168, #173, and #176) were filed pursuant to the provisions of 46b-86(a) of the General Statutes. In deciding these motions the court has considered the factors of 46b-82 of the General Statutes. The court finds there has been a substantial uncontemplated change in the circumstances of the parties. As is evident from an examination of the financial affidavits of the parties, it is the plaintiff's situation that has worsened more than that of the defendant. Nevertheless, it is the plaintiff that seeks termination of the mutual alimony orders.
It is best that any relationship between these parties be terminated. They have continued to litigate from the time of the judgment of dissolution in 1986. It is the court's hope that all issues between the parties will now be put to rest.
Both of these individuals are capable. While the plaintiff's financial situation would appear bleak, the plaintiff is a survivor and, as he describes himself, an "entrepreneur."
The plaintiff's Motions for Modification of Alimony (docket entries #168, #173, #176) are granted and the previous orders of CT Page 7183 alimony of $1. per year to each of the parties are terminated. The defendant's Motion for Modification of Alimony (docket entry #167) to increase the sum to $1,500. per month is denied.
Plaintiff's Request for Relief #6 is granted.
Defendant's Request for Relief #4 is denied.
Each party shall pay his or her own attorney's fees and trial expenses.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE.